Good morning Your Honors, I am Michael Gentipas on behalf of the Appellant Stanley Chairs. Today, Chairs asked this Court to suppress a statement obtained by officers who falsely promised less of a penalty in exchange for his cooperation, and willfully ignored his clear indication of his right to counsel. Three officers overboard, Chairs, an 18-year-old lacking a criminal record or a high school diploma, during a two-hour interrogation in an 8-by-10 room where he was shackled and unable to contact his pregnant fiancée. This Court should send a clear message. Officers cannot willfully trample a suspect's constitutional rights by making undeliverable promises of lenience and ignoring requests for counsel. When this Court reviews the videotape of Chairs' statement, it will be clear that the officers intended to overbear his will. They used inherently intimidating circumstances within the interrogation. Officers Orlando Ward, Calvin Brown, and Dan Owens questioned an 18-year-old at the Juvenile Division of East St. Louis Police Department in an 8-by-10 room while he was shackled and unable to contact his loved ones. They sought to isolate Chairs further, first by ignoring two attempts to invoke the attorney of privilege, second by suggesting that Chairs could help yourself with a statement without the aid of anyone not in that room, and third by noting repeatedly that he had a child and pregnant fiancée at home to whom he wished to return. When Chairs felt thoroughly isolated and asked the officers, how much time can I get given my non-shooting role in the underlying incident, Brown made a clear promise, whenever somebody does something wrong, tell me the truth, generally there's less of a penalty. That was a clear, promising answer to Chairs' question. It offered a specific benefit coupled with his cooperation going forward in the interrogation. The state concedes that Chairs only became cooperative after this point. That was the point when he testified that he believed he would get a lesser penalty for his cooperation. As part of that same statement, didn't the officer also say, we don't have anything to do with the sentence, that's up to the state's attorney, or words to that effect? The officer noted that the state's attorney controlled sentencing decisions. However, he then said, generally, telling the truth, there's less of a penalty. It's that coupling of the statement itself with a promise of means, which is constitutionally impermissible. And it's an impermissibility the state acknowledges. They call it a classic appeal to your inner conscience type of interplay in an effort to recover this. There's nothing constitutionally permissible about a scripted violation of one's rights. It's made even more egregious if it is commonplace in the St. Louis Police Department, as it apparently is. There's no script to violate one's constitutional rights. Simply put, officers cannot imply leniency in exchange for a statement under U.S. Supreme Court precedent. Chairs, of course, was inexperienced with the criminal system. So he never had been arrested before? Had not. He did not have a prior criminal history at all. And he was four months after his 18th birthday and had not graduated high school at the time. So he needed an attorney to know that what the officers were offering him was an undeliverable promise. But the officers themselves made certain that he would have no such advice. They twice spoke over chairs as he attempted to invoke that right. First, immediately after explaining that chairs could obtain a free lawyer, chairs attempted to interject. He said, wait, put Orlando aboard, spoke over chairs, continued his preprinted Miranda form, and did not acknowledge chairs' effort to halt the proceedings at that point. After Ward then said chairs could ask a question at any time, chairs even more clearly invoked his right to counsel, saying, how can I get a free lawyer? Now, not only would a reasonable officer know that this was a request for an attorney, the video shows that Orlando Ward subjectively knew it was a request. He responded with bluster, saying, it's called a public defender. That's entirely unresponsive to chairs' question about the free lawyer he was trying to obtain. He was aiming to distract chairs from that fundamental right. When chairs then tried to clarify why he was even in the police department, Ward continued to misdirect him, explaining that he needed to finish this preprinted Miranda form before he could even tell chairs why he was in the interrogation room in the first place. And this all comes right after telling chairs that he can ask questions at any time. The clear implication being, certainly chairs can ask any questions, but no responses would be forthcoming from the officers. It's clear, when this court reviews the videotape, that the officers willfully crossed constitutional lines they knew existed. And yet the state tries to recover those overbearing exercises with certain magic words, like generally or how. This court shouldn't countenance those arguments. Generally, in Officer Brown's promise of lenience, modified the amount of lenience that chairs might receive. It was not a question whether or not chairs was going to obtain that benefit if he cooperated with questioning officers. Any quantity of lenience, when it's coupled with that promise in exchange for cooperation, is constitutionally impermissible. It was plainly overbearing here to an inexperienced 18-year-old, especially given that he was expecting exactly what Officer Brown promised, less of a penalty given his non-shooting role in the underlying incident. The language that chairs later used to invoke his right to counsel was also constitutionally sufficient to invoke that right. He was not required to speak in the manner of a practiced Harvard law professor in order to invoke that right. This court has held that an inquiry can be sufficient to invoke that right. In the Fane case, where his mind of error was sufficient, other districts of the Illinois and Pell Court have agreed that an inquiry can be sufficient. And this is exactly the sort of language one would expect from an inexperienced defendant who has no prior history working with legal counsel. He would begin by inquiring about the process to obtain that free lawyer he was just promised. To the extent that the officers were confused, the U.S. Supreme Court has made clear that the best practice is to clarify any ambiguity in the defendant's statement. Here, Orlando Ward not only failed to clarify, he willfully obfuscated. He offered non-responsive answers about the title of a free lawyer, attempted to distract chairs from his fundamental rights and the purpose of the interrogation as a whole. That's more than just failing to meet the reasonable officer test that applies here. Ward willfully ignored what he subjectively knew was a request for counsel. If there are no further questions, we'll move forward. Okay. Thank you, counsel. We ask that you suppress the statement made by Stanley Chairs and demand for a new trial. Argument on behalf of the appellee. Good afternoon, Your Honors. May it please the Court and counsel. I will never hardly use the words wisdom and legislature in the same sentence. But in 2003, they actually got something right. When they required that interrogations and murder cases involving their suspects be audio and video recorded, it takes away from that kind of subjective interpretation of things that we have. We only have the testimony of the defendant and the officers. So as counsel points out quite correctly, this Court has the video and can see for itself the nature of the circumstances and the tenor of the interrogation and things of that nature. Obviously, counsel and I have a different view of the same facts, and that's not necessarily unusual. Counsel sort of has kind of argued two things at the same time. Whether the defendant's will is overworn as a result of the defendant's belief that specific promises were made to induce the confession and whether the defendant invoked his significant right to counsel. I'm going to separate those for the time being, principally because the second argument is now preserved in the motion to suppress. In fact, counsel, the defendant alleges that it was either plain error or ineffective assistance to counsel. So I think that the Court's approach to these two separate issues has to be somewhat different in the sense of whether it's properly preserved or not, because if we go with plain error, that requires a distinct inquiry as to that test that this Court has to engage in. The touchstone of all interrogation cases, of course, is the totality of the circumstances. In this case, Judge Perisic, I believe, yes, did in fact consider the totality of the circumstances. He found that the one factor in the defendant's favor was a perception that the officer's statements might be considered, would be considered perhaps an offer of leniency. But he found that that particular notion was contrasted with or countervailed against the officer's concurrent statement that decisions regarding these things are up to the state's attorney and we don't have any control over that. And so apart from that, the Court found that the totality of the circumstances were in favor of finding that the defendant's statements were voluntarily given. I don't want to belabor all of those things, but to run through them quickly, I don't agree with a lot of the counsel's characterizations of the milieu and the tenor of what was going on. The Court will see when it watches the video that they are in an interrogation in the standard setting. It's probably by 10. Yes, probably. Two officers, a special agent with the state police, and a single-use detective were sitting at the table with the defendant. It's a normal-sized table. An ATF agent is also in the room sitting off to the side. You barely ever see him on the video. He kind of pops up every now and then, but he's not, you know, putting his chair up next to the defendant and kind of, you know, grilling him in his face or anything. So the environment is not hostile. It's not aggressive. No weapons were displayed. The interrogation, as the defendant noted, lasted for about two hours probably total. Not all that related to the charges related in this case. Apparently, they were investigating other weapons offenses as well, which is why ATF was involved, I suspect. But there was also a break. I timed it at about 20 minutes. During that time, the defendant acknowledged he had got a smoke and the officer bought him a candy bar. When you look at the interplay between the officers and the defendant, you'll see that the tone is relaxed. It's not aggressive. No forces or threats were made against the defendant. There was, you know, I quote some of this in the brief, a lot of talk by the officer about, hey, you know, you can get this behind you. You should talk. It's a good thing. You know, there's a lot of this sort of, and I call it appeals of the inner conscience, and I think it's oftentimes, and it's particularly on the young defendant, she wants to say, hey, you've got your life ahead of you. And this is how officers can get people to cooperate. And whether, you know, you like this particular technique or not, it's not coercive. It's a psychological tool that's being used. But it was being employed in a way that was fairly brotherly and paternalistic and not as a you better talk or else sort of tenor. He was not under the influence of any intoxicants, and he appeared to be a person of reasonable intelligence. He did leave school in the 11th grade. The records show that the reason for that was not because he was not a good student or had some sort of cognitive deficit. In fact, I believe he was expelled for fighting. So that's where he, why he wound up where he was out of school. Now, the issue of specific promises, I think, you know, is in itself one factor that the court has to take into consideration. It's not the sole factor. So I think that's why I started out by putting all the totality of the circumstances, because I do think that context has a lot to do with it. And I do think that a lot of what the officer said here had a lot to do with trying to get the defendant comfortable in speaking with them. Now, the courts of health constitute a promise of leniency. The statement must be coupled with the suggestion of a specific benefit. It appears that it's on this point where the parties sort of diverge. In this case, I'll read a quote here with Special Agent Brown. He says, no one can promise you, you know, make promises if they're a lesser sentence or anything. But, you know, whenever somebody does something wrong, tell the truth. Generally, there's a lesser of a penalty than the person that lies, you know, didn't tell the truth. You know what I'm saying? I don't agree with counsel's context of generally. I think that when he says generally, I think that that almost itself takes us out of the realm of offering a specific promise and basically speaking in general terms. Vaguely, this is what could happen to you, but it's also coupled with this explicit admonition that we can't promise you anything. The other officer said it's up to the state's attorney to make these decisions. These are factors that the court found to be a particular consequence. And, of course, consideration of that factor was particularly pertinent and correct. So I guess there's really kind of two ways that I would probably present this to the court. Number one, I'm not even sure it constitutes a promise of leniency such that Judge Griff Sivitz' misgivings about the officer's statements had to be weighed against the other statements made by the officer with regards to who makes the decisions regarding the sentencing. I would submit that I'm not even sure it rises to the level of a specific promise of leniency. It's a very generalized statement. And so I think that this court could either way, I think that this court could find that there's ample grounds in the record to justify the circuit court's ultimate conclusion that the defendant's will was not overborne at the time that he gave his confession. Not only the fact that the specific words that were being attributed to the officers didn't constitute a specific offer of leniency, but the totality of the circumstances on top of all that. I think more than anything justifies the circuit court's ultimate conclusion. So in that regard, I would ask this court to affirm the circuit court's judgment in that regard. With regards to the request for counsel, again, this was not raised in the motion to suppress. The court has recently, the Supreme Court has recently adopted a standard that was actually articulated by the United States Supreme Court, which they call objective inquiry. And in that sense, it says if a defendant makes a reference to an attorney that is ambiguous or equivocal, that a reasonable officer would have understood only that the suspect might be involved in the right to counsel, that this is not an ambiguous request for counsel. So what's the product of that, I think? It's important to note that in the U.S. Supreme Court case, it applied that rule only to a post-Miranda waiver situation. But in the Supreme, Illinois Supreme Court, Christopher Kaye, I think it was, the Supreme Court said that we don't see really any reason not to apply that particular rule even within the context of when the defendant is being still read the Miranda warrants, which is the situation that we have here. Now, that being the case, of course, there's a multitude of cases out there which have grappled with that very razor-thin sometimes question of what is or isn't an indication of counsel. There's no really bright-line test to do that, thus making perhaps the objective inquiry even more problematic. Because you have to put yourself in the officer's shoes and decide exactly how they would interpret a particular statement made by a defendant. Courts have found statements by a defendant as, along the lines of, maybe I need a lawyer, or maybe I ought to talk to a lawyer, or in one case, maybe I should call my mom because maybe I want to get a lawyer, have been found by courts to not be, to be a specific, unambiguous request for counsel. And that they also may not be a testament. Thank you. Thank you. We've got one more. After standing in chairs, asked the officers, how much time can I get despite not being the shooter? Officer Brown told chairs, whenever somebody does something wrong, telling the truth generally, there's less of a penalty. That's a clear promise. It couples a benefit, leads less of a penalty with his cooperation in the ongoing interrogation. And it's clear that chairs himself believed he was going to obtain less of a penalty for his cooperation. That's what he testified to in the hearing on the motion to suppress. And the officers, as counsel noted, also told chairs that he had his whole life in front of him. That he might be able to counsel youth in the future, not to make the same mistakes that he did. That even further implies that some lenience might be coming his way. Not that chairs ought to be expecting to spend the next 40 years of his life in prison. Regarding the invocation of the right to counsel, again, what Stanley Chairs said clearly to a reasonable officer was an invocation of counsel. He notified Orlando Ward that he wanted to begin the process of obtaining attorney's advice. A reasonable officer would have stopped the inquiry, or at least followed through with the Supreme Court's recommendation to clarify any ambiguity. Instead, what Orlando Ward responds with is bluster, an attempt to distract chairs from a fundamental right that he's trying to invoke. Was he filling out the form at this time? Were you checking off the Miranda? As you'll see in the video, Orlando Ward continues to go down that form, even after chairs interjects twice. Both while explaining that he can obtain a free lawyer, and then while asking, how can I get that free lawyer? Can you see where he initials by each one, or can you not in the video? I haven't seen it yet. It is possible to see Mr. Chairs initially. I'll note that Mr. Chairs signs the form after Orlando Ward offers these non-responsive answers about his right to an attorney. No, but was he initialing each Miranda warning? I didn't know if he was or wasn't. Then signed it. Mr. Chairs signs that after this exchange is complete. Just once. He didn't go down each one. I don't know if it's clear from the video if he initials each one after, but he doesn't sign anything. I thought I saw that someplace, and I don't know if I saw it in the brief or not. Orlando Ward is going through the pre-printed Miranda form in this interrogation at that point. And it's clear that as soon as he asks, as soon as he describes Mr. Chairs' right to a free attorney, Chairs tries to stop him. He says, wait. And Orlando Ward continues, speaks right over him. Once Chairs asks a question, how do I get a free lawyer? Again, Orlando Ward distracts him, tells him the title of that lawyer is a public defender and nothing further. The reasonable officer would know that this was an indication of that fundamental right to counsel, and that's an important factor as well. Not only was this right to counsel included in Chairs' motion to suppress, it's also a fundamental right that would qualify as second prong claim error. That's a right that fits under that prong according to several previous decisions of this court. Furthermore, it's an error of constitutional dimension that could be raised at any time by Mr. Chairs. He could raise that in a post-conviction petition immediately following this appeal, and there's no reason for the court to wait for that to come when they can address that today to preserve the court's resources. If there are no further questions, again, we ask that Mr. Chairs' statement be suppressed. Thank you. We will take this matter under advisement and issue a moving report.